## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ELOISE EASTERLING,  :  **CIVIL ACTION NO.**
    Plaintiff  :  **3:02CV393 (MRK)**
  :
VS.  :
  :
STATE OF CONNECTICUT, DEPT. OF  :
LABOR, OSHA DIVISION, ET AL.,
    Defendants  :  **MAY 17, 2004**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT AFSCME, COUNCIL 4, AFL-CIO'S
## MOTION FOR SUMMARY JUDGMENT

Pursuant to D.Conn. L. Civ. R. 7(a), defendant AFSCME, Council 4, AFL-CIO respectfully submits this memorandum of law in support of its motion for summary judgment, of even date herewith.

### I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff is a former employee of the State of Connecticut Department of Labor, OSHA Division. Her employment was terminated effective December 22, 1998.

The Union's motion to dismiss this matter on various jurisdictional grounds was "denied without prejudice and without consideration of the merits, with the expectation that [the Union] will refile their motion to dismiss as a summary judgment motion" on February 23, 2004. Thereafter, the plaintiff was deposed on February 23, 2004. During the course of such deposition, she produced several grievances which had been filed on her behalf by the Union, and she testified and/or produced documentation showing that each such grievance had been

settled. Ex. 1-15 to Ex. B.[1]  With respect to each grievance, she was asked if she had been satisfied with the Union's representation.  Essentially, she responded that she was not satisfied with the representation because she was being "targeted" because "the governor didn't want that many people there anymore" and that the Union should have stopped it.  Deposition of Eloise Easterling, dated February 23, 2004 [hereinafter "Depo."] 45-48, 50, 52.[2]  Occasionally, she had specific complaints, such as the fact that Elizabeth Fandacone "[a]llowed them [the State] to question me on all of these different questions, which she knew that they were just harassing me. . . . They were asking me questions about my conduct, when they known I hadn't done nothing."  Depo. at 44.  On another occasion, her complaint was that Denise Woike had failed to provide her with a copy of a document that she wanted because "[s]he said it was removed, but she wouldn't give it up.  And they said they could never find it."  Depo. at 48.

During the deposition, the plaintiff also produced the Settlement Agreement and General Release, dated July 17, 2000, that she entered into in <u>Easterling v. State of Connecticut, Department of Labor, OSHA Division</u>, No. 3:97 CV 02274 (RNC) [hereinafter the "Settlement Agreement"].  The Union was not a party to that lawsuit.  Ex. D.  In connection with the negotiation and execution of the Settlement Agreement, the plaintiff was represented by counsel from Day, Berry & Howard who had been appointed by the Court.  Depo. at 77-78.  Such settlement agreement includes the following language:  "The plaintiff withdraws the arbitration of her dismissal from the Department of Labor in State of Connecticut, Department of Labor, and AFSCME Council 4, AFL-DIO, (Eloise Easterling, Dismissal-NP-3-318) OLR Case No.:

---

[1]Exhibit B is the affidavit of J. William Gagne, Jr., Esq., who deposed the plaintiff.  Such affidavit attests to the fact that the attachments thereto are true and accurate copies of the documents produced by the plaintiff during her deposition.  Each such attachment is referred to herein as "Ex. [#] to Ex. B".

07-4221." Ex. 16 to Ex. B. The plaintiff testified at her deposition that she voluntarily entered into the Settlement Agreement. Depo. at 74.

On or about April 30, 2001, the plaintiff filed with the Connecticut Commission on Human Rights and Opportunities [hereinafter the "CCHRO"] an affidavit of illegal discriminatory practice [hereinafter the "EEOC charge"], a copy of which is attached hereto as Exhibit A. The first page of the EEOC charge contains the following statement: *"The respondent is/are[3] St. of Ct. Labor Dept. and the OSHA Division. I also wish t[o] include the AFlCiO [sic] Union."* Immediately below this language is the following statement: *"whose business address is/are Labor: 200 Folly Brook Blvd, Wethersfield, Ct. 06109".* No address is provided for the Union.

On the second page, the plaintiff includes the following statement: "The Respondent is the State of CT Labor Department—OSHA Division. I also would like to include the AFSCME Council 4 union." Ex. A. at 2. The "particulars" set forth on such page do not include any allegations which would support a finding that the Union discriminated against the plaintiff pursuant to either Title VII or the ADEA.

By letter dated December 21, 2001, the EEOC issued a right-to-sue letter, indicating that it was closing the file on this matter on the grounds that the EEOC charge had been untimely filed. See Letter, dated December 21, 2001, from Robert L. Saunders, Director, EEOC, to Eloise Easterling, attached to the plaintiff's complaint [hereinafter the "right-to-sue letter"]. The right-to-sue letter reflects that a copy was sent to the State of Connecticut Department of Labor,

---

[2]Copies of the pages from the deposition cited in this memorandum are attached hereto as Exhibit C.
[3]The italicized language is preprinted on the CCHRO's form.

OSHA Division; however, nowhere does such letter reflect that the Union was given notice thereof, or was even considered by the EEOC to be a respondent in the matter.

The plaintiff filed the instant action on March 4, 2002. In her complaint, she refers to the July 17, 2000 settlement "on a Civil Rights lawsuit". She further alleges that, when she attempted to secure employment with the State again after such settlement, she was unable to do so because (a) the State retaliated against her for filing a civil rights claim; Complaint at § D, Claim I; (b) she was singled out with respect to the requirements imposed by the State for the settlement of her case; Complaint at § D, Claim II; and (c) the State retaliated against her by requiring her to "give up [her] union rights" and "[keeping] the fact that a [hiring] freeze was on and had been on for years a secret"; Complaint at § D, Claim III.

Nowhere in her complaint does the plaintiff claim that the Union behaved in a wrongful manner. In fact, other than the first page in which she lists the defendants, the sole references to the Union are the claims that the plaintiff was forced to give up her union rights.

## II.    ARGUMENT

### A.    Standards for motion for summary judgment.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(e); Manning v. CIGNA Corporation, 807 F.Supp. 889, 892 (D.Conn. 1991). A factual issue is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is material if it "might affect the outcome of the suit under the governing law." Id. at 255. In deciding whether a genuine issue of

4

material fact exists, the court must draw all reasonable inferences in favor of the nonmoving party. Id. "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, . . . materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law. . . ." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) [ellipses in original; internal quotation marks and citations omitted].

The initial burden is on the moving party to show that there are no relevant facts in dispute. Celotex, 477 U.S. at 323. To defeat a properly supported motion for summary judgment, however, "the plaintiff must present affirmative evidence . . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 257. "The mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Fax Telecommunicaciones Inc. v. AT & T, 138 F.3d 479, 485 (2d Cir. 1998) [emphasis and ellipses in original; internal quotation marks and citations omitted].

> In order to defeat a summary judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by Fed.R.Civ.P. 56(e), the opposing party is required to come forward with materials envisioned by the Rule, setting forth specific facts showing that there is a genuine issue of material fact to be tried. He cannot defeat the motion by relying on the allegations in his pleading, . . . or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible, see, e.g., L & L Started Pullets, Inc. v. Gourdine, 762 F.2d 1, 3-4 (2d Cir.1985); Wyler v. United States, 725 F.2d 156, 160 (2d Cir.1983). The motion "will not be defeated merely . . . on the basis of conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 112 S. Ct. 152, 116 L.Ed.2d 117 (1991).

Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996) [some internal citations omitted].

"If the undisputed facts reveal that there is an absence of sufficient proof as to any essential element on which the opponent of summary judgment has the burden of proof, any factual

dispute with respect to other elements becomes immaterial and cannot defeat the motion." Id. at 519.

The fact that a plaintiff is proceeding pro se does not relieve her of the obligation to allege sufficient facts upon which a recognized legal claim could be based. Kloth v. Citibank (South Dakota), N.A., 33 F.Supp.2d 115, 119 (D.Conn. 1998).

**B.**     **Jurisdictional claims.**

     **1.**     **The Court lacks subject matter jurisdiction, because the complaint fails to raise any federal question with respect to the Union, and no basis exists for the exercise of pendent jurisdiction.**

          **a.**     **The plaintiff has pled no federal claim against the Union.**

The plaintiff invokes the jurisdiction of this Court pursuant to Title VII, 42 U.S.C. §§ 2000e et seq. and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. She has not, however, alleged any facts which would support a claim that the Union violated her rights under either of these statutes, or upon any other basis. Therefore, this Court lacks jurisdiction with respect to the Union.

"It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S. Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Even if the plaintiff's complaint is construed to state claims under Title VII and/or the ADEA as against her former employer,[4] she has alleged no facts whatsoever which would raise an issue of federal law with respect to the Union. Therefore, this Court does not have jurisdiction over the matter by virtue of the existence of a federal issue.

---

[4]The Union does not mean to imply by this statement that the plaintiff has stated any valid cause of action under either Title VII or the ADEA as against any party.

It is also significant that no other basis exists for a finding of jurisdiction as to the Union. Since both the Union and the plaintiff are Connecticut citizens, there is no diversity jurisdiction. As set forth more fully in Section II.C, below, the plaintiff has failed to allege *any* cause of action against the Union. Therefore, there is no basis for the exercise of this Court's discretion pursuant to 29 U.S.C. § 1367(a) to exercise supplemental jurisdiction. Although the pre-printed portion of the complaint asserts jurisdiction pursuant to 28 U.S.C. § 1343(a)(3), that statute provides that this Court has jurisdiction "[t]o redress the deprivation, *under color of any State law, statute, ordinance, regulation, custom or usage,* of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." [emphasis added] Since the Union is not a governmental entity, it could not have been acting under color of law, and so this statute does not confer jurisdiction over any claim which might be asserted against the Union.

Accordingly, the plaintiff has failed to allege a federal claim against the Union over which this Court has jurisdiction.

        **b.**    **Even if the plaintiff's complaint is construed as setting forth a claim for breach of the duty of fair representation, such claim would arise under state law, and the Court should not exercise pendent jurisdiction over such claim because the Court would be required to decide a novel or complex issue of state law.**

Even if the Court were to hold that the plaintiff has properly alleged and could otherwise prove facts constituting a claim for a breach of the duty of fair representation, such claim must fail, because it would arise under state law, and no basis exists for the exercise of pendent jurisdiction.

7

The plaintiff does not claim that this Court has jurisdiction pursuant to over the Union pursuant to § 301 of the Labor-Management Relations Act [hereinafter "LMRA"]; however, the LMRA is the only federal basis for a claim of the duty of fair representation. Because the LMRA does not apply to state and municipal employees, and because the plaintiff has pled no facts which would support federal jurisdiction under any other theory, this Court lacks subject matter jurisdiction, and the case should be dismissed as against the Union.

The LMRA defines "employer" and "employee" as follows:

> (2)     The term "employer" includes any person acting as an agent of an employer, directly or indirectly, but shall not include . . . **any State or political subdivision thereof . . . .**

> (3)     The term "employee" shall include any employee, and shall not be  —
> limited to the employees of a particular employer, . . . but **shall not include any individual employed . . . by any other person who is not an employer as herein defined.**

29 U.S.C. § 152(2) and (3) [emphasis added]

As these subsections makes clear, there are only two ways that the plaintiff could have invoked jurisdiction under § 301 against the Union.  First, the Union could have been her employer.  It is undisputed, however, that her employer was the State of Connecticut, and not the Union; therefore, this option fails.  Second, she could have been employed by a private employer.  Because her employer was the State, however, she did not work for an employer covered by the LMRA.  Therefore, this alternative must also fail.

In N.L.R.B. v. Natural Gas Utility District of Hawkins County, Tennessee, 402 U.S. 600, 604, 91 S. Ct. 1746, 1749, 29 L.Ed.2d 206 (1971), the U.S. Supreme Court considered the meaning of the phrase "political subdivision" as used in 29 U.S.C. § 152(2), stating: "Congress enacted the § 2(2) exemption to except from Board cognizance the labor relations of federal, state and municipal governments . . . ."  Accordingly, state and federal courts have long held that  •

8

governmental employers are excluded from the LMRA.  See, e.g., Casey v. City of Fairbanks, 670 P.2d 1133, 1138 (Alaska 1983) ("The Labor Management Relations Act . . . expressly exempts state and municipal government employees from coverage."); Boynton v. Town of Bethel, 1998 WL 417575 (Mottolese, J.); Long v. City of Saginaw, 911 F.2d 1192 (6th Cir. 1990); Canady v. Washington Metropolitan Area Transit Authority, 909 F.Supp. 324 (D.Md. 1995); Storlazzi v. Bakey, 894 F.Supp. 494 (D.Mass. 1995), aff'd 68 F.3d 455 (1995).

In the instant case, the Union's duty of fair representation to state employees arises out of Title 5 of the Connecticut General Statutes, not the LMRA.  Conn. Gen. Stat. § 5-271(d) establishes a labor organization's duty of fair representation with respect to state employees who are members of the bargaining unit.  Accordingly, an employee who seeks to bring a claim under this statute does so pursuant to state law.

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. Subsection (a) of 28 U.S.C. § 1367 provides that, where the district court has original jurisdiction, it shall have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Subsection (c) of 28 U.S.C. § 1367 sets forth certain circumstances in which a district court may decline to exercise supplemental jurisdiction.  Such circumstances include those presented in the instant case, i.e., where "the claim raises a novel or complex issue of State law. . . ."

The decision to decline the exercise of supplemental jurisdiction rests in the sound discretion of the District Court.  Kidder, Peabody & Co., Inc. v. Maxus Energy Corp., 925 F.2d 556, 563 (2d Cir. 1991); Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997)

(affirming granting of employer's motion for summary judgment on ADEA claims and dismissal of pendent state claims).

> That power [to exercise supplemental jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims. . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

In the instant case, the retention of the plaintiff's state law claim would require the Court to decide "a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Because the plaintiff was a state employee, the Union's duty of fair representation arose under the statutory scheme enacted by the Connecticut legislature to govern the collective bargaining process with respect to state employees. Accordingly, if the Court were to retain this claim, it would be required to apply and interpret Conn. Gen. Stat. §§ 5-271(d) and 5-272(b)(4). Specifically, the Court would be required to assess whether, as the Union argues in Section II.C.4, below, a claim for breach of the duty of fair representation brought under the State Employee Relations Act is subject to the same six-month time limitation as a DFR claim brought under the LMRA. Although the Union believes that the same limitation period should apply, neither the Connecticut Supreme Court nor the Appellate Court has heretofore addressed that issue and, therefore, the Union respectfully submits that it is appropriate that the first determination of this issue be made by those tribunals.

Because the plaintiff, as a state employee, is not entitled to the protections of the LMRA, this Court has no jurisdiction over any claim she might present for a breach of the duty of fair

10

representation. Accordingly, even if her pleading is somehow construed as presenting a claim for a breach of the duty of fair representation, such claim fails.

### 2. Even if the complaint were deemed to be legally sufficient and the Court otherwise had subject matter jurisdiction, the action should be dismissed as to the Union, because the plaintiff failed to exhaust her administrative remedies with respect to the Union.

Before filing a lawsuit seeking relief under Title VII or the ADEA, "a litigant must exhaust administrative remedies in a timely fashion." Briones v. Runyon, 101 F.3d 287, 289 (2d Cir. 1996). In the instant case, the plaintiff did not exhaust her administrative remedies against the Union. Accordingly, the plaintiff cannot prevail as against the Union.

The plaintiff claims to bring this action under Title VII and the ADEA. Complaint at ¶ 3, p.1. Section 706(f)(1) of Title VII of the Federal Civil Rights Act, 42 U.S.C. § 2000e-5(f)(1), provides the procedure for instituting a civil action against a respondent after filing a charge with the EEOC. The jurisdictional prerequisites that an individual must satisfy before she is entitled to institute a law suit under Title VII of the Civil Rights Act of 1964 are met where an individual (1) files a timely charge of employment discrimination with the EEOC, and (2) receives and acts upon the EEOC's statutory notice of right to sue. Alexander v. Garner-Denver Co., 415 U.S. 36, 94 S. Ct. 1011, 39 L.Ed.2d 147 (1974). This requirement also applies to claims brought pursuant to the ADEA. Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001).

### a. Merely indicating a desire to include the Union is insufficient to satisfy the requirement that the Union be named as a respondent.

Before the plaintiff could assert a claim against the Union under either Title VII or the ADEA, she was required to name the Union as a respondent in the EEOC charge and to set forth

allegations of claimed wrongdoing by the Union. Because she failed to do so, she has not satisfied the exhaustion requirement.

At the outset, it is notable that the plaintiff has not even alleged that she filed a charge with the EEOC against the Union.[5] -Although her EEOC charge contains the statement that she also wishes to include "the AFlCiO union" and/or the "AFSCME Council 4 union," and although she unequivocally designated the State as a respondent, she never actually stated in the EEOC charge that the Union was, in fact, a respondent. She did not include the Union's address in the space where she was required to list the address of the respondent(s). Moreover, the complaint contains no allegations whatsoever which even imply that the Union engaged in conduct which violated either Title VII or the ADEA.[6] In effect, therefore, it is as if the plaintiff failed even to mention the Union.

"Only parties previously identified as respondents in charges filed with the EEOC are subject to subsequent liability under Title VII." Terrell v. United Pipe & Foundry Co., 644 F.2d 1112, 1122 (5th Cir. 1981). In the instant case, although the plaintiff indicated that she "would like to include" the Union as a respondent, she neither identified the Union as an actual respondent nor set forth any allegations against it. The mere expression of a desire to "include" the Union is insufficient. Nothing about the charge would have placed the Union on notice with respect to any claim that it had violated the plaintiff's rights under either Title VII or the ADEA. The most the Union could have divined from the EEOC charge was that the plaintiff anticipated

---

[5]Section E.3 of the complaint contains the following preprinted statement: "*I have exhausted available administrative remedies.* ___*Yes* ___ *No.*" Next to this statement, the plaintiff wrote, "N/A".

[6]This was not the first time that the plaintiff had filed a discrimination claim. See Exhibit E, Amended Complaint (Retaliation) of Eloise Easterling, CHRO No. 9610498, dated February 15, 1996. It can fairly be concluded, therefore, that the plaintiff knew how to set forth allegations in such a claim in detail if she chose to do so.

12

adding the Union as a respondent if some unidentified condition were satisfied, at which time the plaintiff would presumably have attempted to add allegations of wrongdoing by the Union.  In addition, the right-to-sue letter which the plaintiff attached to her complaint in the instant case makes no reference to the Union, an omission which can fairly be construed as reflecting a lack of awareness by the EEOC that the plaintiff wished to name the Union as a respondent.

Even recognizing that the plaintiff was proceeding pro se and that the EEOC charge was somewhat inartful, it cannot be ignored that she was clear and explicit with respect to her identification of the State as a respondent and her claims of wrongdoing by her former employer. If she was capable of being that clear about the State, she was capable of being that clear about the Union.  Her failure to do so, therefore, is fatal to her claims against the Union, and the complaint should be dismissed for failure to exhaust her administrative remedies against the Union.

The complaint cannot now be amended to include allegations of Title VII or ADEA violations by the Union, because no claim which is not set forth in the EEOC charge or reasonably related thereto can be asserted in a lawsuit. Deravin v. Kerik, 335 F.3d 195, 200-201 (2d Cir. 2003). "In determining whether claims are reasonably related, the focus should be on the *factual allegations made in the EEOC charge* itself, describing the discriminatory conduct about which a plaintiff is grieving." Id. at 201 [emphasis added; internal citation, brackets and quotation marks omitted]. "Claims are not alike or reasonably related unless there is a factual relationship between them. . . . This means that the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*." Johnson v. Milwaukee School of Engineering, 258 F.Supp.2d 896, 903 (E.D.Wis. 2003) [emphasis in original].

13

As noted, the plaintiff has alleged no facts in the EEOC charge which can be construed as setting forth claims of discriminatory conduct by the Union. It logically follows that no claim can now be asserted against the Union which would be "reasonably related" under Deravin. Therefore, any claim which the plaintiff might seek to make at this point would be outside the scope of the EEOC charge and would consequently be barred. Johnson, 258 F.Supp.2d at 903-905.

Although the plaintiff indicated a desire to include the Union in the EEOC charge, she failed to identify the Union as a respondent in the same unequivocal manner as she had designated the State, and she failed to allege any wrongful conduct by the Union in the EEOC charge. Consequently, she has not adequately named the Union as a respondent in the EEOC charge, and so she has failed to exhaust her administrative remedies as to the Union. For these reasons, the plaintiff cannot prevail as against the Union, and judgment should enter in favor of the Union.

**b.    The identity of interests exception to the exhaustion requirement is inapplicable.**

"The purpose of this exhaustion requirement is to provide notice to those alleged to have committed the violations and to provide an opportunity for the parties to comply voluntarily with the requirements of Title VII." Maturo v. National Graphics, Inc., 722 F.Supp. 916, 924 (D.Conn. 1989). "A limited exception to the exhaustion requirement exists against a party not named as a respondent in the EEOC complaint if the underlying dual purposes of the exhaustion requirement are otherwise satisfied." Id. at 925. The factors to be considered under this exception, which is known as the "identity of interests" exception, are as follows:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
> 2) whether, under the circumstances, the interests of a named party are so similar

14

as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Johnson v. Palma, 931 F.2d 203, 209-10 (2d Cir. 1991) [internal brackets omitted]. In the instant case, the plaintiff has failed to satisfy any of these four factors and, therefore, this exception does not apply.

First, since the plaintiff has failed entirely to allege that the Union engaged in any wrongful conduct or wrongfully failed to act in a way that violated her rights under Title VII and/or the ADEA, she cannot claim that the Union's role could only be ascertained after the filing of the EEOC complaint. Moreover, since she mentioned a Union representative in the complaint, she was clearly aware of the Union's involvement in her case prior to the filing of the charge. Therefore, the Union's alleged role could, through reasonable effort by the plaintiff, have been ascertained at the time of the filing of the EEOC charge.

Second, the interests of the Union, as a labor organization representing her, are sufficiently dissimilar from the interests of her erstwhile employer that the Union's involvement in the EEOC proceedings would have been necessary for voluntary compliance and conciliation. Her EEOC complaint and the instant complaint clearly reflect claims of wrongdoing by the entity which, she claims, had the power to hire or fire her. By contrast, during the term of her employment, the Union represented her in bargaining and other circumstances wherein she and her employer could have been deemed to be in an adversarial position. Conn. Gen. Stat. § 5-271. Clearly, therefore, the interests of the Union and the employer were dissimilar.

Third, the Union has been prejudiced by the plaintiff's failure to set forth any allegations against it in the EEOC charge. As noted above, the instant complaint also fails to set forth any

15

allegations against the Union. Accordingly, as of the date hereof, the Union is entirely without knowledge as to what the plaintiff claims the Union has done or failed to do which allegedly violated her rights under Title VII and/or the ADEA, and so it has been unable to conduct any investigation to determine whether or to what extent any factual allegations might be true.

Fourth, the Union has never represented to the plaintiff that its relationship with her was to be conducted through her employer. To the contrary, as evidenced by the letter attached to the plaintiff's complaint, the Union represented her in connection with a labor dispute with her employer. See Letter, dated January 10, 2000, from Gayle M. Hooker, Staff Representative, AFSCME, Council 4, AFL-CIO, to Thomas Malecky, Office of Labor Relations.

Vital, supra, is directly on point. In Vital, the pro se plaintiff brought a Title VII action against his employer and his union. Although the plaintiff had filed a charge with the EEOC, he had not named the union in his charge, nor had he received a right-to-sue letter naming the union. Accordingly, the union moved to dismiss the complaint, and the district court granted the motion. In affirming the dismissal of the complaint, the Second Circuit reiterated the well-established rule that "[a] complainant must file a charge against a party with the EEOC or an authorized state agency before the complainant can sue that party in federal court under Title VII." Vital, 168 F.3d at 619, citing 42 U.S.C. § 2000e-5(f)(1). The Court then considered whether the identity of interests test would warrant denial of the union's motion to dismiss:

> [I]t was appropriate for the District Court to dismiss Mr. Vital's Title VII claim against Local 1199. Mr. Vital does not contest the fact that he failed to file an administrative complaint against Local 1199. Although the District Court did not explicitly consider the four factors identified in Johnson, it is clear from the record that (1) Mr. Vital was fully aware of Local 1199's role at the time he filed the EEOC charge, (2) the interests of Local 1199 and IMC are sufficiently dissimilar that Local 1199's participation would be necessary to voluntary conciliation, and (3) there is no allegation that Local 1199 ever represented to Mr. Vital that his relationship with Local 1199 should be through IMC. Accordingly, there is no identity of interest between IMC and Local 1199. [FN3] Further, as in

16

Johnson, there is no indication that the unnamed party had notice of any charge against it. Mr. Vital thus has no Title VII claim against Local 1199.

> FN3. On this record, it is not clear if Local 1199 suffered actual prejudice from not being named in the EEOC charge. However, given the strength of the other three factors, we are satisfied that there is no identity of interest between Local 1199 and IMG.

Id. at 620.

Likewise, in the instant case, no identity of interests exists as between the Union and the State. As set forth above, none of the four Johnson factors has been satisfied. It would be manifestly unjust to permit the plaintiff to march into court with entirely new and heretofore unidentified claims of wrongdoing against the Union when the clear and unequivocal law required her to assert such claims in her EEOC charge several years ago. Permitting these claims would undermine both goals of the exhaustion requirement, as the Union would be deprived of notice and of the opportunity for voluntary compliance. See Vital, 168 F.3d at 619.

### c.     The EEOC charge was not timely filed and, therefore, the exhaustion remedy has not been satisfied.

The right-to-sue letter indicates that the plaintiff's case was closed because the EEOC charge was not timely filed. Even if the EEOC charge were to be construed as including factual allegations against the Union, therefore, such claims are time-barred and the plaintiff has not satisfied the exhaustion requirement.

"Under both Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a *timely* complaint with the EEOC and obtained a right-to-sue letter. . . . Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." Legnani, 274 F.3d at 686 [emphasis added; internal quotation marks and citations omitted]. The statutory requirement that an EEOC charge be filed within a certain time following the allegedly

17

discriminatory action "functions as a statute of limitations, in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." Armstead v. The Stop & Shop Companies, Inc., 2002 WL 770732 at *3 (Arterton, J.), citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), and Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996).

In the instant case, the EEOC specifically made a finding in the right-to-sue letter that the EEOC charge was not timely filed. Therefore, to the extent that the EEOC charge is interpreted as setting forth a claim against the Union, any claim related thereto is time-barred, and the plaintiff has, therefore, failed to satisfy the requirement that she exhaust her administrative remedies.

C.      **Non-jurisdictional claims.**

1.      **The plaintiff's complaint fails to state a claim upon which relief may be granted, because it alleges no wrongful act or omission by the Union.**

"While a complaint must be liberally construed, . . . a pro se party's status does not relieve her of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . ." Kloth, 33 F.Supp.2d at 119 (dismissing pro se plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6)). In the instant case, the plaintiff has failed to allege any viable claim as against the Union.

Even the most liberal reading of the complaint fails to reveal any allegation that the Union engaged in any wrongful conduct, much less the particularized allegations required in a civil rights complaint. See Settles v. Pinderton, Inc., 482 F.Supp. 461, 467-68 (D.S.C. 1979) (dismissing pro se plaintiff's civil rights complaint where complaint was "vague and conclusory"); Simpson v. Welch, 900 F.2d 33, 35-36 (4th Cir. 1990) (allegations deemed

18

insufficient to state a claim where complaint "contain[ed] no factual allegations whatsoever" to support claims of poor treatment, prejudice, bias and harassment).  Sections C and D of the complaint, which set forth the plaintiff's claims of wrongdoing, are all very clear in that they focus solely on the conduct of the State as her former employer.  In essence, she alleges that *the State* improperly required her to forfeit certain rights to settle the civil rights claim she had previously asserted and that *the State* retaliated against her for such claim by refraining from advising her of a hiring freeze.  The plaintiff has set forth *no allegations whatsoever* that the Union did or failed to do anything which can possibly be construed as violating her rights under either Title VII or the ADEA.

Although a pro se plaintiff's complaint is to be construed liberally, that liberality has limits.  Dismissal is appropriate "where it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which will entitle [her] to relief. . . ." Vital, 168 F.3d at 619.  This is such a case.  Therefore, the Union asks that the Court enter judgment in its favor.

2.     **The plaintiff has failed to allege, and cannot prove, a claim that the Union breached its duty of fair representation.**

The plaintiff has not alleged any of the elements of a claim for a breach of the Union's duty of fair representation.  Even if her complaint were somehow to be construed as setting forth such a claim, however, the evidence fails to support such a claim.  Therefore, the Union is entitled to judgment on the complaint.

A union breaches its duty of fair representation to a client "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967); Labbe v. Hartford Pension Commission, 239 Conn. 168, 194 (1996).

19

"Arbitrary or bad-faith conduct . . . or substantial evidence of fraud, deceitful action or dishonest conduct . . . is required to show a breach of the duty of fair representation." <u>Cruz v. Local Union No. 3 of the Int'l. Bhd. of Electrical Workers</u>, 34 F.3d 1148, 1154 (2d Cir. 1994), quoting <u>Ryan v. New York Newspaper Printing</u>, 590 F.2d 451, 455 (2d Cir. 1979) [ellipsis in <u>Cruz</u>]. "[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." <u>Cruz</u>, 34 F.3d at 1153-54. As long as the Union acted in good faith, the Court may not intercede on the part of an employee who may have been prejudiced by a rationally founded decision. <u>Cook v. Pan American World Airways, Inc.</u>, 771 F.2d 635, 645 (2d Cir. 1985).

In order for a union's actions to be arbitrary such that it breaches the duty of fair representation, the union's conduct must be "so egregious, so far short of the minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." <u>Barr v. United Parcel Service, Inc.</u>, 868 F.2d 36, 43 (1989). "A union's action are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness . . . as to be irrational." <u>Labbe</u>, 239 Conn. at 195, quoting <u>Air Line Pilots v. O'Neill</u>, 499 U.S. 64, 67, 111 S. Ct. 1127, 113 L.Ed.2d 51 (1991) [internal quotation marks omitted, ellipsis in <u>Labbe</u>]. In order for a union's actions to be in bad faith such that the duty of fair representation is breached, such actions must involve fraudulent, deceitful or dishonest conduct. <u>Int'l. Union of Electrical Workers v. NLRB</u>, 41 F.3d 1532, 1537 (D.C. Cir. 1994). Mere negligence or tactical errors on the part of the Union in processing a grievance do not constitute a breach of the duty of fair representation. <u>Barr v. United Parcel Service</u>, 868 F.2d 36, 43-44 (2d Cir. 1989); <u>Murphy v. Air Transport Local 501</u>, 123 F.Supp.2d

20

55, 58 (D.Conn. 2000); <u>Fleming v. The Stop & Shop Supermarket Co.</u>, 36 F.Supp.2d 87, 90-91 (D.Conn. 1999).

The plaintiff has neither alleged nor testified to any facts which would support a claim that the Union acted arbitrarily, discriminatorily or in bad faith. To the contrary, each time she was disciplined by her employer, the Union filed and pursued a grievance on her behalf, and such grievances were ultimately settled. <u>See</u> Statement of Undisputed Material Facts at ¶¶ 5, 8, 11, 13, 15, 17, 23, 25, referring respectively to Ex. 1, 3, 5, 8, 10, 12, 16 to Ex. B. Even the grievance with respect to the termination of her employment was withdrawn as part of the settlement of her first lawsuit against the State.[7] <u>See</u> Ex. 16 to Ex. B at 2.

At her deposition, the plaintiff was specifically asked with respect to such grievances whether she was satisfied with the representation provided by the Union. Essentially, she responded that she was not satisfied with the representation because she was being "targeted" because "the governor didn't want that many people there anymore" and that the Union should have stopped it.[8] Depo. at 45-48, 50, 52. Occasionally, she had specific complaints, such as the fact that Elizabeth Fandacone "[a]llowed them [the State] to question me on all of these different questions, which she knew that they were just harassing me. . . . They were asking me questions about my conduct, when they known I hadn't done nothing." Depo. at 44. On another occasion, her complaint was that Denise Woike had failed to provide her with a copy of a document that she wanted because "[s]he said it was removed, but she wouldn't give it up. And they said they could never find it." Depo. at 48.

---

[7] The plaintiff was represented in connection with such settlement by counsel from Day, Berry & Howard who had been appointed by the Court. Depo. at 77-78.
[8] The grievances filed by the Union on the plaintiff's behalf during the course of her employment included, as requested relief, that the State "cease unfair treatment." Ex. 2, 6, 10, 11 to Ex. B.

In short, the plaintiff has failed entirely to allege or demonstrate that the Union acted arbitrarily, discriminatorily, or in bad faith in its representation of her.  Every time she filed a grievance during her employment, the Union represented her and was able to resolve the grievance.  In addition, she voluntarily withdrew the grievance with respect to the termination of her employment, during which proceeding she was represented by counsel.  The plaintiff has not presented, and cannot present, any evidence that would enable a jury to find that the Union breached its duty of fair representation and/or that she sustained damages as a result of any such breach.

Therefore, the Union is entitled to judgment on the plaintiff's complaint.

**4.     Even if the plaintiff had alleged and could prove a claim for the breach of the duty of fair representation, such claim is time-barred.**[9]

Even if the plaintiff had an otherwise actionable claim for breach of the duty of fair representation, such claim is now time-barred, as it is well settled that a lawsuit alleging a breach of the duty of fair representation must be filed within six months of the time the member knew or reasonably should have known of the alleged breach.  DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 171, 103 S. Ct. 2281, 76 L.Ed.2d 476 (1983); Thibault v. Stop & Shop Companies, Inc., 585 F.Supp. 1359, 1361 (D.Conn. 1984); Wilhelm v. Sunrise Northeast, Inc., 923 F.Supp. 330, 337 (2d Cir. 1995).

The Union notes that it is not inconsistent to find that any claim for the breach of the duty of fair representation arises under state law, and yet apply the federal statute of limitations to such claim.  Although Connecticut state courts have not yet addressed the timeframe for the

---

[9]As set forth in Section II.B.1.b, above, the Union respectfully submits that because the state courts have not yet addressed the issue of the proper statute of limitation to be applied to a claim under the State Employee Relations Act, this issue ought not be addressed in the context of this

filing of a claim for a breach of the duty of fair representation arising under state law, Connecticut courts have held that, because its various labor relations acts "are closely patterned after the National Labor Relations Act, the decisions of the United States Supreme Court are 'of great assistance and persuasive force' in the interpretation of our own labor relations law." Local 1186 of Council No. 4, AFSCME, AFL-CIO v. State Bd. Of Labor Relations, 224 Conn. 666, 670-71 (1993), citing West Hartford Education Assn., Inc. v. DeCourcy, 162 Conn. 566, 579 (1972). As noted above, federal courts are unanimous that a claim for a breach of the duty of fair representation must be brought within six months. No logical basis exists for a finding that a duty of fair representation brought under state law should have a different limitations period.

Accordingly, even if the plaintiff had properly pled and could otherwise prove a viable claim for a breach of the duty of fair representation over which this Court had jurisdiction, such claim would be time-barred.

**5.**   **In the absence of allegations and evidence that the employer breached the collective bargaining agreement, the plaintiff's claim against the Union for an alleged breach of the duty of fair representation is insufficient as a matter of law.**

In Mastro v. Board of Education of the Town of Hamden, 200 Conn. 482 (1986), the Connecticut Supreme Court considered the claims of a former employee against the employer for breach of the collective bargaining agreement and against the union for breach of the duty of fair representation. Having found that the employer had not breached the applicable collective bargaining unit, the Court addressed the claim against the union and stated, "[W]e do note that an employee *has no cause of action whatsoever* against his union where the employer has not

---

litigation. Nonetheless, in the event that this Court determines that the issue may be properly decided in this case, the Union presents its arguments on this point.

breached the collective bargaining agreement." Id. at 487, citing Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 568-70, 96 S.Ct. 1048, 1058-59, 47 L.Ed.2d 231 (1976) [emphasis added].

In Spellman v. Town of East Lyme, 1995 WL 216893 at *4 (Hurley, J.), affirmed 41 Conn. App. 909 (1996), the Court granted summary judgment for the union on the plaintiff employee's claim of the breach of the duty of fair representation on the grounds that there was no breach of the collective bargaining agreement.

The plaintiff has not alleged that her former employer breached the collective bargaining agreement. In the absence of such allegation, any claim that the Union breached its duty of fair representation fails as a matter of law to state a claim upon which relief may be granted. Therefore, the Union is entitled to judgment.

## III.    **CONCLUSION**

For the reasons set forth above, defendant AFSCME, Council 4, AFL-CIO respectfully asks that this Court grant the instant motion and enter judgment in its favor.

DEFENDANT, AFSCME, COUNCIL 4, AFL-CIO

By
J. William Gagne, Jr.
Gagne & Associates, P.C.
1260 Silas Deane Highway
Wethersfield, CT  06109
(860) 522-5049
Federal Bar No. ct02126

24

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed via first-class mail, postage prepaid, on May 17, 2004, to all counsel and pro se parties of record, as set forth below:

Ms. Eloise Easterling
35 Imlay Street
Hartford, CT  06105

A.A.G. Edward F. Osswalt
A.A.G. Maria C. Rodriguez
55 Elm Street
P.O. Box 120
Hartford, CT  06141-0120

_____
J. William Gagne, Jr., Esq.

25