# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ELOISE EASTERLING,     :
            :
    Plaintiff,     :
            :
v.            :   Civil No. 3:02cv393 (MRK)
            :
STATE OF CONNECTICUT,   :
DEPARTMENT OF LABOR,   :
OSHA DIVISION, ET AL.,    :
            :
    Defendants.    :

## MEMORANDUM OF DECISION

In this case, Eloise Easterling sues her former employer, the State of Connecticut

Department of Labor ("the Department") for retaliation under the Age Discrimination in

Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634 (2000) and Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17.[1]  She also appears to assert state

law claims against her former union, the AFSCME, Council 4, AFL-CIO ("the Union").

Currently pending before the Court are summary judgment motions filed by the Department

[**doc. #60**] and the Union [**doc. #64**].  For the following reasons, the Court GRANTS both

motions.

## I.

The following facts are undisputed unless otherwise noted.[2]  Ms. Easterling was hired by

---

[1] In her March 12, 2003 decision, Judge Arterton dismissed all of Plaintiff's claims against the individual defendants as well as all claims against the Department, other than any claim for retaliation.  *See* Ruling on Mot. to Dismiss [doc. #29].

[2] The following facts were drawn from the parties pleadings and the exhibits attached thereto: Department's Memorandum in Support of Summary Judgment [doc. #61] ("Dept.'s Mem. in Supp. Summ. J."); Department's Local Rule 56(a)(1) Statement [doc. #62] ("Dept.'s 56(a)(1) Stmt."); Union's Memorandum in Support of Summary Judgment [doc. #65] ("Union's Mem. in

the Department on June 16, 1989 as a Clerk Typist, and was promoted to the position of Office

Assistant on February 4, 1994. *See* Dept.'s 56(a)(1) Stmt. ¶ 1-2; Letter of 6/2/1989, Ex. 1,

Attach. A [doc. #60] (offering Ms. Easterling employment as a clerk typist); Letter of 4/25/1994,

Ex. 1, Attach. B (promotion letter). On October 24, 1997, Ms. Easterling filed her first federal

lawsuit against the Department alleging employment discrimination. *See Easterling v. Dep't of

Labor*, 3:97CV02274 (RNC). About a year later (on December 8, 1998) while her lawsuit was

still pending, the Department terminated Ms. Easterling's employment for cause. *See* Dept.'s

56(a)(1) Stmt. ¶ 5; Letter of 12/8/1998, Ex. 1, Attach. C [doc. #60] (terminating Ms. Easterling

for "serious misconduct"). Eventually, the Department and Ms. Easterling entered into a

settlement agreement to resolve her lawsuit. *See* Settlement Agreement and General Release, Ex.

2 [doc. #60]. As a condition of settlement, Ms. Easterling agreed "not to re-apply for

employment with the [Department]," but she reserved her right to "apply for employment with

other State of Connecticut departments or agencies." *Id.* ¶ 3. The Court notes that Ms.

Easterling does not claim she was ever told that she would be rehired by any state agency. *See*

Easterling Dep. at 115, Ex. 2 [doc. #60].

On September 1, 1999, then-Governor John Rowland announced a limited hiring freeze

of state employees and then tightened the freeze further in January 2001. Dept.'s 56(a)(1) Stmt.

¶¶ 20, 22. Despite the freeze, state agencies continued to hire employees in certain departments.

In particular, various state agencies hired over 140 clerk typists between July 10, 2000 and

---

Supp. Summ. J."); Union's Statement Pursuant to Local Rule 56(a)(1) [doc. #66] ("Union's
56(a)(2) Stmt."); Plaintiff's Motion in Opposition to Summary Judgment [doc. #68] ("Pl.'s Mot.
in Opp. Summ. J."); Plaintiff's Motion in Opposition to Summary Judgment [doc. #71] ("Pl.'s 2d
Mot. in Opp. Summ. J.").

February 9, 2004, and 100 clerks between July 14, 2000 and April 16, 2004.  *See* Dept.'s 56(a)(1)

Stmt. ¶¶ 26-27; List of Hires, Ex. 6, Attach. A [doc. #60].  Ms. Easterling was qualified for either

a clerk typist or clerk position.  *See* Dept.'s 56(a)(1) Stmt. ¶ 25.

Unfortunately, however, Ms. Easterling did not apply for any position with any state

agency following the signing of the settlement agreement with the Department.  *See* Dept.'s

56(a)(1) Stmt. ¶ 14-18.  She did submit her resume to the University of Connecticut at Storrs

sometime during 2000 and to the Department of Children and Family Services in 2001; however,

she did not follow-up with an application because she "found out they had a freeze."  Easterling

Dep. at 90, 112, Ex. 2 [doc. #60].  She also called the Department of Public Works to inquire

about openings sometime in 2000 or 2001, but failed to apply for any positions because the

clerical positions that were then available required familiarity with Microsoft Excel and

PowerPoint, which Ms. Easterling apparently did not possess.  *Id*. at 98.

On April 30, 2001, Ms. Easterling filed an Affidavit of Illegal Discriminatory Practice

against the Department with the Connecticut Commission on Human Rights and Opportunities

("CHRO") charging the Department with retaliation.  *See* Easterling Aff., Ex. I, Attach. B [doc

#19].  This lawsuit followed.  It is difficult to parse Ms. Easterling's complaint.  However, it

appears that she believes that her difficulties in obtaining employment with another state agency

is the result of having previously sued the Department; in effect, as she alleges, the Department is

"blackball[ing]" or "penalizing" her for having sued the Department.  Compl. [doc. # 1] at 2-3.

## II.

A party moving for summary judgment must establish that there are no genuine issues of

material fact in dispute and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56

(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986).  "A party opposing a properly brought motion for summary judgment bears the burden of

going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue

for trial.' "  *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In

determining whether a genuine issue has been raised, all ambiguities are resolved and all

reasonable inferences are drawn against the moving party.  *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.

1980).  Summary judgment is proper when reasonable minds could not differ as to the import of

evidence.  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).  "Conclusory allegations will

not suffice to create a genuine issue."  *Delaware & H. R. Co. v. Conrail*, 902 F.2d 174, 178 (2d

Cir. 1990).  The fact that a plaintiff is proceeding *pro se* does not relieve her of the obligation to

allege sufficient facts upon which a legal claim could be based.  *Kloth v. Citibank (South

Dakota), N.A.*,  33 F. Supp. 2d 115, 119 (D. Conn. 1998).  Bald assertions and conclusions of law

will not suffice.  *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) (citations omitted).

Determinations as to the weight to accord evidence or credibility assessments of witnesses are

improper on a motion for summary judgment as such are within the sole province of the jury.

*Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

### III.

**ADEA Retaliation.**   Ms. Easterling's ADEA retaliation claim against the Department is

barred by as a matter of law by the Eleventh Amendment doctrine of sovereign immunity.  In

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000), the Supreme Court held that the Eleventh

Amendment prohibited a private individual, such as Ms. Easterling, from suing non-consenting States under the ADEA. *Id*. at 91; *Latham v. Office of Atty. Gen. of State of Ohio*, -- F.3d --, No. 03-3830, 2005 WL 39083, at *8, (6th Cir. Jan. 10, 2005) (affirming summary judgment for the state on plaintiff's ADEA retaliation claim on grounds of sovereign immunity). As an agency of the State of Connecticut, the Department shares in the State's immunity. *See, e.g.*, *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Therefore, this Court lacks subject matter jurisdiction over Ms. Easterling's ADEA retaliation claim against the Department. *See Butler v. N. Y. State Dep't of Law*, 211 F.3d 739, 746 (2d Cir. 2000) (dismissing ADEA appeal for lack of subject matter jurisdiction pursuant to decision in *Kimel*); *Parmlee v. Conn. Dep't of Revenue Servcs*., 160 F. Supp. 2d 294, 300 (D. Conn. 2001) (granting summary judgment to the state on ADEA claim on grounds of sovereign immunity).

**Title VII Retaliation**.    The Eleventh Amendment does not stand as an obstacle to Ms. Easterling's Title VII retaliation claim. *See Butler*, 211 F.3d at 746 (*Kimel* does not address Title VII). Nevertheless, the Court concludes that the Department is entitled to summary judgment on that claim as well.

In order to make out a Title VII retaliation claim, a plaintiff must show that: "(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of [her] participation in the protected activity; (3) the employer took adverse action against [her]; and (4) a causal connection existed between [her] protected activity and the adverse action taken by the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (citations and

quotations omitted).   In this case, the Department does not dispute that Ms. Easterling filed a

discrimination complaint that was known to the Department.  *See* Dept.'s Mem. in Supp. Summ.

J. [doc. #61] at 7.  Instead, Ms. Easterling's claim fails on the requirement that she show that the

Department took an adverse employment action against her.

      The Second Circuit has defined an adverse employment action as "materially adverse

change" in the terms and conditions of employment.  *Richardson v. N.Y. State Dep't of Corr.*

*Serv.*, 180 F.3d 426, 446 (2d Cir. 1999).  This definition has been extended to cover certain

actions taken by a former employer that injure a former employee's "ability to secure *future*

employment."  *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) (emphasis

in original); *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979) (plaintiff may have

retaliation claim against former employer who "blacklists" him), *rev'd on other grounds*, 447

U.S. 807 (1980).  Thus, if Ms. Easterling could demonstrate that the Department took steps to

prevent her from gaining future state employment, she might have a colorable claim.

      But Ms. Easterling can show no such thing.  Indeed, the undisputed facts show that Ms.

Easterling failed to apply for *any* job with *any* employer, let alone any other state agency, after

signing the settlement agreement.  *See* Dept.'s 56(a)(1) Stmt. ¶ 14-18; *see, e.g.*, *Brown v. Coach*

*Stores*, 163 F.3d 706, 710 (2d Cir. 1998) (plaintiff failed to state a claim where she failed to

apply for a position because the jobs were infrequently posted and because she was dissuaded by

an "aura" of racism); *Dow v. West*, No. 00-CV-0050E(SR), 2002 WL 31011882, at *3

(W.D.N.Y. Aug. 16, 2002) ("[The plaintiff] suffered no adverse employment action – because he

could not be 'rejected' for a position for which he did not apply," therefore "his retaliation claim

also fails.").  While Ms. Easterling complains mightily about the hiring freeze and asserts that the

-6-

Department should have informed her about it before she signed the settlement agreement,[3] the undisputed facts show that despite the hiring freeze, the State continued to hire clerks and typists – positions for which Ms. Easterling was qualified and for which she might have been hired had she applied for them.  *See* Dept.'s 56(a)(1) Stmt. ¶¶ 25-27; List of Hires, Ex. 6, Attach. A [doc. #60].  Moreover, the State's hiring freeze affected only state employers.  There is no evidence whatsoever suggesting that any action by the Department had any bearing on Ms. Easterling's ability to seek employment outside the state system.  On these facts, a reasonable jury could not find that the Department took an adverse employment action against Ms. Easterling.[4]

**State Law Claims.**   There are no remaining federal claims in this case over which this Court has original jurisdiction.  On its face, Ms. Easterling's complaint does not appear to assert any claims against the Union, even when construed liberally.  In fact, the only reference to the Union in Ms. Easterling's complaint is her allegation that she was forced to "give up" her union

---

[3] Ms. Easterling's  pleadings are rife with unsupported allegations that "[the State] doesn't want blacks" and that the Department "pulled a trick" on her.  *See* Pl.'s Mot. in Opp. Summ. J. [doc. #68], at 4-5.  Without more, such conclusory allegations do not suffice to raise triable issues of fact.  *See Kloth*, 33 F. Supp. 2d at 119 (the fact that a plaintiff is proceeding *pro se* does not relieve her of the obligation to allege sufficient facts upon which a legal claim could be based).  Nor can Ms. Easterling rely on temporal proximity in this case.  *See Jute v. Hamilton Sunstrand Corp.*, 321 F. Supp. 2d 408, 418 (D. Conn. 2004) (Sometimes, a "causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").

[4] Ms. Easterling's complaint contains allegations that the Department "tricked" her into signing the settlement agreement by failing to disclose an impending hiring freeze.  However, the Court does not read Ms. Easterling's pleadings as requesting the Court to set aside the settlement agreement.  The crux of Ms. Easterling's complaint is that after settling her claims with the Department, she was unable to obtain employment within the state system, a situation for which she blames the Department.  As the Court has already explained, however, there is no evidence in the record suggesting that the settlement agreement had any effect on any application she may have filed for employment with the State.  Indeed, the facts show that Ms. Easterling may well have been re-hired by the State had she applied.

rights as a part of the settlement agreement she entered into with the Department.  *See* Compl.

[doc. #1], at 4.

At her deposition, however, Ms. Easterling complained that she was not satisfied with

several grievances that had been filed on her behalf by the Union and she stated that the Union

had failed to prevent discrimination against her.  *See* Easterling Dep., Ex. C [doc. #65], at 45-48,

50, 52.  She expanded on these allegations in her response to a motion for summary judgment by

the Union.  *See* Pl.'s 2d Mot. in Opp. Summ. J. [doc. #71].  The Court notes that Ms. Easterling

cannot bring a breach of representation claim under the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 185, because "the LMRA does not apply to employees of 'any State or

political subdivision thereof.' "  *Harris v. United Fed'n of Teachers*, No. 02-Civ. 3257 (GEL),

2002 WL 18890391, at *1 (S.D.N.Y. Aug. 14, 2002) (noting that although there is no published

Second Circuit authority on point, unpublished opinions exist); *Strasburger v. Bd. of Educ.,

Hardin County Comty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 360 (7th Cir. 1998) (former teacher

could not sue his union under the LMRA because his employer, the school board, was exempt as

a political subdivision); *Crilly v. Southeastern Pa. Transp. Auth.*, 529 F.2d 1355, 1363 (3d Cir.

1976) (same result).  Therefore, even taking her allegations as true, Ms. Easterling has – at best –

only a state law claim against the Union for breach of its duty of representation.

"Under 28 U.S.C. § 1367(c)(3), district courts 'may decline to exercise supplemental

jurisdiction over a claim . . . if the district court has dismissed all claims over which it has

original jurisdiction.' "  *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105 (2d Cir.

1998).  The Union has urged the Court not to exercise supplemental jurisdiction over Ms.

Easterling's state law claims.  *See* Union's Mem. in Supp. Summ. J. [doc. # 65], at 7-8.  The

-8-

Court agrees with the Union.  Having dismissed all claims against the Department – the only

claims over which this Court had original jurisdiction – considerations of judicial economy,

convenience, fairness, and comity do not weigh in favor of exercising supplemental jurisdiction

over the remaining state law claim against the Union.  *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d

Cir. 1994).  Therefore, the Court dismisses without prejudice the state law claims against the

Union.  *See Barnes v. CCH Corp. Sys.*, No. 01 Civ. 2575 (AKH), 2004 WL 1516791, at *8

(S.D.N.Y. July 7, 2004) (dismissing state law claims after summary judgment granted on all

federal claims); *see also Braheney v. Town of Wallingford*, No. 3:00 Civ. 2468 (CFD), 2004 WL

721834, at *20-21 (D. Conn. Mar. 30, 2004) (declining to exercise supplemental jurisdiction

over plaintiff's state law claims after court dismissed as a matter of law all federal claims over

which it had original jurisdiction).

### IV.

For the foregoing reasons, the Department's Motion for Summary Judgment [**doc. #60**] is

GRANTED.  In addition, the Court declines to exercise supplemental jurisdiction over any

remaining state law claims against the Union.  Therefore, the Union's Motion for Summary

Judgment [**doc. #64**] is GRANTED without prejudice to Ms. Easterling's pursuing her remaining

state law claims in state court, should she choose to do so.  **The Clerk is directed to close the**

**file**.

IT IS SO ORDERED.


/s/        Mark R. Kravitz       
United States District Judge

**Dated at New Haven, Connecticut: <u>February 1, 2005</u>**.